[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: TERMINATION OF PARENTAL RIGHTS
This memorandum of decision addresses a petition brought to terminate the parental rights (TPR) of respondent Eric B., Sr. (Eric Sr.), the biological father of Eric B., Jr. (Eric Jr.), born September 1992. The Department of Children and Families (DCF) filed the TPR petition against Eric Sr. on November 14, 2002, alleging that Eric Sr. wished to consent to the TPR.
Eric Jr.'s mother, Laureen died in 2000.
On 11/1/01, DCF invoked a 96 Hour Hold on behalf of Eric Jr. On 11/5/01, DCF was granted an Order of Temporary Custody on behalf of this child. On 11/5/01, DCF also filed a Petition of Neglect and Uncared for in the Superior Court for Juvenile Matters in Waterbury on behalf of the above named child. On 3/14/02, the child was adjudicated neglected and uncared for and committed to the care and custody of the Commissioner of DCF as a neglected and uncared for child.
On November 20, 2002, before this court, Eric Sr. consented to the termination of his parental rights of Eric Jr. He was represented by competent counsel who was with him throughout the canvass and related proceedings. After the canvass, the court heard testimony from DCF Social Worker Kelly White concerning the termination.
The court has reviewed the verified petition and the TPR social study. This court has jurisdiction over the pending case. Notice of this proceeding has been provided in accordance with the applicable provisions of the Practice Book. No action is pending in any other court affecting custody of Eric Jr.
For the reasons stated below, the court finds that the TPR issues have been proven against Eric Sr. by clear and convincing evidence. The court finds in favor of the petitioner State of Connecticut and DCF. CT Page 622
Father, Eric Sr. was adopted at age one and has no knowledge of his biological parents. He was the oldest of three children. He has been married three times and has two children from the first marriage, a son who is nineteen and a daughter who is twenty. His second wife, Laureen, the mother of Eric Jr., and a daughter, died in 2000 from complications due to alcohol abuse.
Eric Sr. reported that he met his third wife immediately following his second wife's death in March of 2000. He described their relationship as "the best thing that ever happened to him". This woman, Marci S., (Marci) moved in with Eric Sr., Eric Jr. and another child, with her three children in May of 2000. He married her in February of 2002. He denied being abusive toward her children and feels he is a "father figure" to them.
Eric Sr. reported that he is in excellent health. He has not had any major operations or hospitalizations. He has never been in the military. Eric Sr. reported that he has a police record that includes domestic violence with his first wife and" a couple of OWl's."
The maternal grandmother, (MGM), reported that Laureen was happy until she met Eric Sr. She described Eric Sr. as an abusive man with an addiction to alcohol. According to MGM, Laureen endured years of physical and emotional abuse by Eric Sr. Laureen suffered from alcoholism and died from cirrhosis of the liver. She left three children.
MGM was very concerned about her grandchildren's welfare when her daughter died and made numerous unsuccessful efforts to intervene by contacting the police department. She reported that her oldest grandchild by Laureen was placed with her at age three due to Eric Sr.'s physical abuse toward the child. MGM reported that she made several attempts to help Laureen to leave the abusive relationship, but Laureen remained involved with Eric Sr.
The history of the file reflects that DCF has been involved with Eric Jr.'s family since 1993.
DCF records indicate that Eric Jr. was identified by the Department as being at high risk due to the failure to thrive and his special needs. In 5/93, Eric Jr. lost 8-12 ounces in 12 days. Emotional and physical neglect were substantiated against both parents at that time.
On 1/13/95, emotional neglect was substantiated by DCF due to the concerns involved with Eric Jr.'s specialized needs and the parents CT Page 623 failure to consistently follow through with all medical appointments for Eric Jr.
On 10/21/98, another referral was made with allegations of physical neglect concerning Eric Jr., his biological sister and half sibling with his mother, Laureen, named as the perpetrator. Eric Sr. was observed to be intoxicated at a PPT meeting and the school called in a referral.
On 1/15/99, a referral was received from Maple Hill School stating that Eric Jr. arrived to school with what appeared to be the remnants of duct tape on his mouth. He disclosed that father put duct tape over his mouth to keep him quiet. DCF substantiated emotional neglect for cruel, forceful and submissive acts by Eric Sr. The Department also substantiated medical neglect by Eric Sr. for failure to obtain a wheelchair for Eric Jr.
On 8/25/00, a report was investigated for allegations of domestic violence. There were several subsequent referrals made to DCF with regard to abuse and neglect concerning Eric Jr. Eric Sr. was involved in a new relationship with his live in fiancee Marci. In October of 2001, Eric Sr. and Marci requested voluntary services to assist with managing Eric Jr. and his specialized needs. At that time, it appeared that both caretakers were overwhelmed with the care he required and in need of assistance. The case was open under Voluntary Services at that time. Eric Sr. attended an intake at Waterbury Child Guidance. Shortly after this occurred, another referral came in on this family (11/1/01) which required an immediate removal of Eric Jr. The basis for the removal was due to physical abuse by Eric Sr. On 11/1/01, Eric Jr. arrived at school with bruises on his right cheek and eye area. There were two scratches on the left side of the head and the upper eye area was purple and swollen. Eric Jr. reported that his father "smacked me hard" on 10/31/01. Eric Jr. further reported that his father often yelled at him and called him an "asshole." Eric Jr. reported he was typically allowed out of his bedroom only to eat. Eric Sr. admitted to DCF on 11/1/01 that he was intoxicated on 10/31/02. He stated he was completely overwhelmed and had been drinking since noon that day. He recalled only hitting him once with an open hand. Eric Sr. had an extensive history of alcohol abuse and black outs as well as incidences of domestic violence. Eric Jr.'s 7-year-old sister reported that on 10/31/01, father hit Eric Jr. approximately 12 times. The sister reported that Eric Sr. drank alcohol almost every day and when he drank he became "mad" and "yells a lot" at his girlfriend. The sister reported that her father acted really mean when he drank and he yelled at her. When he drank or when he was mad, she would go to her room. The sister further reported that her father and his live-in girlfriend didn't play with Eric Jr. and Eric Jr. typically only CT Page 624 left his room to eat. The sister reported that on 10/31/01, Eric Jr. was not allowed to go trick or treating. Eric Jr. reported he was afraid to remain with his father.
Eric Sr. was arrested for the physical abuse based on the 10/31/01 incident. He was charged with Risk of Injury and Assault 3 on a Disabled Person. Father was convicted of Assault 3 and Reckless Endangerment on 3/26/02. He is on probation for three years. Conditions include: submit to a substance abuse evaluation, refrain from threatening or assaulting his son, cooperate with DCF, secure employment in 30 days and complete 100 hours of community service.
CGS Sec. 17a-112 (k) exempts a consensual termination from the necessity of the seven written findings. However, even with a consent, the court must conduct a hearing to determine by clear and convincing evidence that termination is in the best interests of the children.
The following specific steps were ordered for Eric Sr. on 11/5/01:
Keep your whereabouts known to DCF, your attorney and the attorney for the child.
Participate in counseling and make progress toward the identified treatment goals:
 Parenting-improve parenting skills to eliminate physical violence in the home; learn strategies to deal with conflict in the home; attend individual counseling to improve self awareness in regard to single parenting, improve self control and increase frustration tolerance to reduce the likelihood of acting out aggression thus compromising the physical safety of your children; attend family counseling in order to afford your children the opportunity to ventilate their feelings regarding abuse/neglect in a safe and supportive environment.
Accept and cooperate with in home support services by DCF.
 Submit to substance abuse assessment and follow recommendations regarding treatment, including inpatient treatment if necessary, aftercare and relapse prevention.
 Submit to random drug testing; time and method of testing shall be at the discretion of DCF.
Keep all appointments set forth by DCF. CT Page 625
 Recommended service providers for parenting/individual/family counseling, in-home support services and/or substance abuse assessment/treatment:
 Family Intervention Center-substance abuse evaluation and treatment, relapse prevention program and urine screens, Family Ties-parenting classes, Waterbury Child Guidance Clinic-individual and family counseling.
Cooperate with court ordered evaluations or testing.
 Sign releases authorizing DCF to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before the court.
No substance abuse.
Eric Sr. has repeatedly informed DCF that he does not want to work toward reunification with Eric Jr. and is willing to consent to the termination of his parental rights. Obviously, this refusal constitutes a failure to rehabilitate. Eric Sr. is described in the social study as follows:
 He has admitted to chronic alcohol use and being physically and verbally abusive while intoxicated. He stated that he drinks when he is overwhelmed and admitted that taking care of Eric Jr. was overwhelming. He has admitted to having black outs from excess drinking. [Eric Sr.] has never demonstrated an extended period of sobriety.
Eric Sr. shows no signs of rehabilitating himself in the future. In his present state, his habits and vices have rendered him incapable of properly raising Eric Jr. and incapable of providing for his physical, educational, moral or emotional well-being. His refusal to undertake personal rehabilitation does not encourage the belief that, within a reasonable time, considering the age and needs of the child, that he could assume a responsible position in Eric Jr.'s life. Eric Jr. cannot wait for Eric Sr. to do so. Additionally, his acts of commission or omission have denied Eric Sr. the care, guidance or control necessary for Eric Jr.'s physical, educational, moral or emotional well-being.
Eric Sr. has not made realistic and sustained efforts to conform his conduct to even minimally acceptable parental standards. Giving him additional time would not likely bring his performance as a parent within acceptable standards sufficient to make it in the best interest of the child to be reunited. DCF has offered Eric Sr. opportunities to CT Page 626 rehabilitate himself, yet he refused to do so. Unfortunately, Eric Sr.'s antisocial habits and alcohol are a greater lure to him that his responsibilities to his son.
Eric Jr. was born at 35 weeks on 9/92 to Eric Sr. and Laureen. Eric Sr. reported that Laureen drank excessive alcohol (gin) during her pregnancy with Eric Jr. and did not receive any prenatal care. Birth records indicated that mother smoked cigarettes and had hypertension throughout this pregnancy. Eric Jr. was delivered via Cesarean Section and weighed only 2 lbs 12 oz. He was born with severe In Utero Growth Retardation (IUGR), hydrocephalus and a heart murmur. He was transferred to Yale New Haven Hospital (YNHH) on 9/24/92 and a right ventricular peritoneal shunt was placed on 9/26/92. He was diagnosed with Ventricular Septal Defect (VSD). An MRI taken on 10/8/92 showed holoprosencephaly and calcifications. He was seen by an opthamologist for micro-opthalmia in the left eye. YNHH discharged him with the following diagnoses: VP shunt, VSD, IUGR of unknown etiology and holoprosencephaly. He was discharged to parental care after a month's stay at YNHH.
At four years of age, Eric Jr. exhibited obvious growth and developmental delays. He was recognized as significantly retarded both mentally and physically. He was unable to walk independently and was significantly underweight. His development was categorized as impaired due to his physical problems. The significant signs of developmental delays included: inability to walk without a walker, bowel and bladder incontinence, sixth nerve palsy (eye), impaired depth perception and decreased sensory awareness of lower extremities. There is reference in the case narrative that Eric Jr. received Birth to Three services in the home after which he was transitioned into an early intervention special education program in Naugatuck.
Due to ongoing cardiac problems, Eric Jr. was evaluated at the Center for Pediatric Cardiology at Yale New Haven Hospital Yale New Haven Hospital on 11/26/1996. Dr. Kleinman diagnosed him with a small hemodynamically non-significant ventricular septal defect. He was assessed again on 4/1/01 and it was reported that Eric Jr. was doing quite well. An echocardiogram conducted in January of 2001 noted no significant changes. This condition should correct itself. Follow up was recommended in 2003.
According to Eric Sr., Eric Jr.'s special needs were not met during his early years of development. Eric Jr. was not encouraged to walk and eat independently. Eric Sr. reported that it was not until his mother's death in 2000, that Eric Jr. began to show signs of developmental improvements. Eric Sr. attributed this to his fiancee's patience with CT Page 627 Eric Jr. and willingness to work with him. He reported that Eric Jr. needed a wheelchair until the age of eight. Father reported that Eric Jr. became behaviorally challenging when he became mobile. Eric Jr.'s mobility required constant supervision and re-direction. Eric Sr. stated that he and Marci could not provide the intensive level of care that Eric Jr. required. According to Eric Sr., both he and Marci made extreme efforts to care for Eric Jr.
The case record indicates that Eric Jr. suffered cruel punishment, neglect, verbal abuse and physical abuse while in parental care. He was exposed to substance abuse and domestic violence. He experienced the death of his mother and the introduction of a new maternal figure. He was often left alone in his room in soiled clothing and without food or stimulation. His only stimulation was at school or from his younger sister. He was often denied fun activities such as trick or treating because he required assistance with walking and specialized attention due to his mental deficits. Page 6 of 9
Eric Jr. came into DCF care on 11/1/01 due to physical abuse and neglect. He immediately demonstrated signs of Post Traumatic Stress Disorder (PTSD) resultant from his traumatic and abusive childhood. He displayed anxiety and fear about seeing his father and verbalized that he did not wish to visit with him or live with him. He disclosed more incidences of physical and emotional abuse by his father. Eric Jr. stated that he was locked in a closet and also made to eat his own feces when he soiled himself. He further reported that Marci put dish soap in his mouth when she was mad at him.
On 11/6/01, DCF's Certification of a Childs' Complex Medical Needs Form identified the following medical complexities for Eric Jr.:
 Hydrocephalus with shunt (left side) — a pathological condition characterized by an abnormal accumulation of cerebrospinal fluid, usually under increased pressure, within the cranial vault
 Chiari malformation — a disorder of hepatic circulation, marked by venous obstruction, that leads to liver enlargement, ascites (fluid), extensive development of collateral vessels, and severe portal hypertension
Absent corpuscallosum — deformity of the brain)
Ventricular septal defect-heart murmur) CT Page 628
Global developmental delays
 Sixth nerve palsy (eye) — muscular nerve in the brain which is abnormal/paralyzed
Bowel and bladder incontinence.
Eric Jr.'s initial foster care placement did not work out due to the tremendous work and supervision involved in caring for Eric Jr. and his multiple medical needs. The Department contracted with Jewish Family Services (IFS) to identify a medically complex foster home. He was placed in a medically complex foster home on 11/9/01. A medically complex case manager from IFS was assigned to routinely monitor Eric Jr.'s medical needs and provide support to the foster family. The family demonstrated commitment to Eric Jr. and expressed an interest in adoption. Eric Jr. thrived in a safe and stable home environment. He made significant developmental gains in this home such as walking independently and toilet training. Behaviorally, Eric Jr. demonstrated little emotion, some confusion with past and present and fixated on certain topics and objects. His PTSD symptoms decreased but he continued to have sleep difficulties, eating issues, anxiety and flashbacks. He was engaged in play therapy at Waterbury Child Guidance Clinic to address these ongoing issues but was ultimately discharged because he was not verbal or productive in sessions.
The Department referred Eric Jr. to the Child Development Center at Connecticut Children's Medical Center in Hartford to clarify his emotional, medical and educational needs. Six evaluations were conducted. The neuropsychological evaluation concluded, "Eric[Jr.] is a child with significant neurological impairment resulting in global information processing impairments and bilaterally and diffuse brain processing compromises. His cognitive levels reflect that of readiness level skills for academics. Functional levels also indicate that of below the 5 year old level overall. He is diagnosed with moderate mental retardation secondary to neurological impairment. He is hampered by significant emotional concerns and shows symptoms associated with generalized anxiety disorder including restlessness, difficulty concentrating, irritability and sleep disturbance. This is a child who is easily overwhelmed by emotional responses and shows limited resources to manage his behavior and emotion. He is highly reliant on his environment for structure and for support both cognitively and emotionally. He has few resources for bringing his behavior and emotions under control on his own and is likely to show an exaggerated affect and strong responses even to seemingly trivial matters. He is highly vigilant to his environment and can be impulsive. Adult supervision will be important for him even CT Page 629 more so then would be anticipated for a 7year old child." The results of the interdisciplinary evaluation indicated that his significant neurological impairment has impacted his cognitive, speech and language and motor profile. His cognitive abilities fall with the intellectually deficient range and functional levels are also below the 5 year old level overall. These deficits have significantly compromised his acquisition of academic and functional concepts and skills. He also exhibits physical deficits across all areas, most specifically, fine motor, visual and perception and strength and mobility.
DCF's current Certification of a Childs' Complex Medical Needs Form dated 11/1/02 identified the following medical complexities and chronic problems for Eric Jr.:
 Arnold Chiari Malformation and Absent Corpus Callosum Shunt VSD Failure to Thrive Developmental Delays Strabismus surgery Cleft Palate Hearing deficit of 1 ear Undescended testes Walker assistance Scohosis
Eric Jr. is regularly followed by:
 Dr. Ena Chow-pediatrician in Waterbury Dr. Charles Duncan, neurologist at YNHH Dr. Steven Thornquest, opthamologist in Waterbury Dr. Jerome Sugar, ears, nose and throat specialist in Waterbury Dr. John Fahey, cardiologist at YNHH Dr. Ennis, orthopedist at YNHH Dr. Moy, urologist in Waterbury Dr. Anthony LePore, dentist in Southbury
Eric Jr. has had the following surgeries: yp shunt replacement at YNHH on 9/26/92; eye repair at St. Mary's Hospital on 12/14/01; Orchidopexy and Tonsillectomy at Waterbury Hospital on 4/3/02. He was most recently hospitalized at YNHH for 4 days in August 2002 for dehydration due to very low sodium levels.
Eric Jr. appears substantially younger than his chronological age. He weighs approximately 40 pounds and is approximately three feet tall. He CT Page 630 wears glasses and a shoe insert and uses a walker when it is not appropriate to walk independently such as transitioning in school or walking in busy public areas. He does not take medication. He has no known allergies. Due to the Ventricular Septal Heart Defect (VSD), he requires protection from bacterial endocarditis with prophylaxis for every invasive procedure, including dental work.
Eric Jr. is in a self-contained special education class at Maple Hill School in Naugatuck. He requires special transportation due to his physical disabilities. He receives weekly speech and language services as well as occupational and physical therapies in the school setting. He attends summer school due to his significant intellectual impairment. His is very bonded to his teachers and loves school. This school is very supportive and fond of Eric Jr. They have worked with him for 5 years. He was denied for DMR services due to DCF involvement.
Eric Jr. is a 10 year old boy who is extremely social and engaging. He is affectionate and inquisitive. He enjoys singing and moving. He loves animals, Barney and the Bible. Eric Jr. is verbal about wanting to be a part of a family. He needs and deserves permanency, a "forever family." He needs to feel safe, secure and loved. He will benefit from a highly structured environment with considerable consistency and predictability. Eric Jr. likes to feel in control and likes to be given choices He requires much nurturing, prompts and supervision. He needs a committed individual or family who will advocate for his lifelong medical and educational needs.
Long term foster care is not in the Eric Jr.'s best interests, in view of his need for permanency. He requires stability of placement and continuity of care. This is even more important in view of his serious developmental and physical handicaps. Obviously, this is unobtainable while he are in Eric Sr.'s care and dominion.
As previously indicated, counsel for Eric Jr. indicated that it was in Eric Jr.'s best interests for Eric Sr.'s parental rights to be terminated and for Eric Jr. to be adopted. He indicated that Eric Jr. was doing well in his foster home. Social worker White testified that Eric Jr. was looking for a "forever home".
Eric Jr. has verbalized that he does not want to visit or live with his father, and he fears his father due to physical abuse and neglect. Eric Jr. is very bonded to his grandmother, sister and half-brother. He looks forward to phone calls and visits, and inquires about them. Unfortunately, the grandmother is not a placement resource for Eric Jr. Although he developed significant emotional ties to his foster family, he CT Page 631 had no difficulty with the removal. He expressed relief that he would not be hurt anymore and is eager to be in a new family.
Eric Jr. is 10 years old, but emotionally functions at a 5 year old level. It is crucial for Eric Jr. to be placed in a family in which he can feel safe, secure, nurtured and loved. Eric Jr. needs and deserves permanency.
Eric Sr. has not seen his son since his removal from the home on 11/5/01. Eric Sr. has never called DCF to request a visit or to inquire about his child's physical, emotional or educational status.
The social study indicates that DCF has no knowledge of Eric Sr. having been prevented from maintaining a meaningful relationship with Eric Jr. by any unreasonable act or conduct by anyone, or by Eric Sr.'s economic circumstances.
Based upon the evidence produced at the hearing, it is clear that termination is in the best interests of Eric Jr. The court finds that the State has proved this by clear and convincing evidence.
Therefore, the court finds that based upon the credible evidence and testimony presented, that it would be in the best interest of Eric Jr. to terminate parental rights of Eric Sr. at this time. This finding is made after considering his sense of time, his need for a secure and permanent environment, the relationship that he has with the foster family and the totality of circumstances.
It is accordingly ORDERED that the parental rights of Eric B., Sr. are hereby terminated as to his son, Eric B., Jr. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan shall be submitted in accordance with the law.
JUDGEMENT MAY ENTER ACCORDINGLY.
Talor J. CT Page 632